IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LISA R. GARZA-SELCER, *et al.*,          §
                                         §
         Plaintiffs,                     §
                                         §
v.                                       §          Civil Action No. 3:15-CV-03791-N
                                         §
1600 PACIFIC SUBTENANT, LLC, *et al.*,  §
                                         §
         Defendants.                     §

## **ORDER**

This Order addresses Defendants 1600 Pacific Subtenant, LLC ("1600 Pacific"), HCI

Construction, LLC ("HCI Construction"), and HRI Properties, LLC's ("HRI Properties")

(collectively, "Defendants") motion to dismiss [15], Defendants' motion to expunge lis

pendens, Plaintiffs Express Working Capital LLC d/b/a CapRock Services ("CapRock"),

Lisa R. Garza-Selcer, and Shelby Hall L.L.C.'s ("Shelby Hall") (collectively, "Plaintiffs")

motion for leave to file second amended complaint [31], and Plaintiffs' motion for leave to

file third amended complaint [41]. The Court grants the motions for leave to amend, grants

in part and denies in part the motion to dismiss, and grants the motion to expunge.

## I. THE ORIGINS OF THE MOTIONS

This case arises from a landlord-tenant dispute regarding a restaurant opening in

downtown Dallas, Texas.[1] On April 8, 2015, Shelby Hall entered into a lease agreement (the

---

[1]The following summary of alleged facts is drawn from Plaintiffs' Third Amended
Complaint. *See* Pls.' Mot. for Leave, Ex. A, Third Am. Compl. [41-1] ("Third Amended
Complaint").

ORDER – PAGE 1

"Lease") with 1600 Pacific to develop a restaurant on the ground floor of a new hotel and residential building. Although development of the restaurant began amicably, a series of disagreements ultimately arose regarding the restaurant's features and construction. The project experienced delays, and the restaurant failed to open on its projected start date, September 1, 2015. On October 29, 2015, 1600 Pacific gave Shelby Hall notice of its intent to terminate the Lease.

On October 30, 2015, Shelby Hall, Garza, and Shelby Hall Beverage, LLC ("Shelby Hall Beverage") filed an original petition and application for a temporary restraining order in state court. *See* Notice of Removal, Ex. A-2 [1-1]. Defendants removed the case to this Court on November 24, 2015, under 28 U.S.C. §§ 1332, 1441, and 1446. *See* Notice of Removal 1 [1]. Defendants moved to dismiss the petition for failure to state a claim. *See* Mot. to Dismiss [3]. In response, Shelby Hall, Garza, Shelby Hall Beverage,[2] and CapRock filed an Amended Complaint, thereby mooting the pending motion to dismiss. *See* Am. Compl. [11]. Defendants filed a second motion to dismiss. *See* Mot. to Dismiss [15]. Since then, Plaintiffs have moved for leave to file a Second Amended Complaint and a Third Amended Complaint. *See* Pls.' Mot. for Leave [31]; Pl.s' Mot. for Leave [41]. Defendants have also submitted a motion to expunge Plaintiffs' notice of lis pendens. *See* Defs.' Mot. to Expunge [18].

---

[2]Shelby Hall Beverage has since filed a notice of voluntary dismissal of all claims against Defendants. *See* Not. of Voluntary Dismissal 1 [29].

## II. THE COURT GRANTS the MOTIONS for LEAVE TO AMEND

Plaintiffs seek leave to amend their complaint against the Defendants.  The Second Amended Complaint and Third Amended Complaint differ from the Amended Complaint in four ways.  First, the amended pleadings would clarify which plaintiff brings each claim against the Defendants.  Second, the amended pleadings would add a cause of action for declaratory judgment.  Third, the amended pleadings would request the additional remedy of specific performance.  And fourth, the Third Amended Complaint would add a cause of action for quantum meruit.

A court "should freely give leave [to amend] when justice so requires."  FED. R. CIV. P. 15(a)(2).  Plaintiffs filed both of their motions for leave to amend prior to the Court-ordered deadline for filing such a motion.  *See* Scheduling Order 1 [20].  Defendants argue that amendment is futile because the amended allegations fail to state plausible claims for declaratory judgment, specific performance, and quantum meruit.  Without addressing the sufficiency of Plaintiffs' new claims, the Court grants the motions for leave to amend.  The Court grants the motions without prejudice to Defendants reurging their arguments in a motion to dismiss.

## III. THE COURT GRANTS IN PART AND DENIES IN PART THE MOTION TO DISMISS

"[A]n amended complaint supersedes [an] original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading . . . ."  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).  When a motion to dismiss is filed against a superseded complaint, courts ordinarily deny the motion

as moot. *See, e.g.*, *Mangum v. United Parcel Servs.*, 2009 WL 2700217, at *1 (N.D. Tex. 2009). However, a court may "consider the sufficiency of the complaint on its own initiative." *Guthris v. Tifco Indus.*, 941 F.2d 374, 379 (5th Cir. 1991). In the interests of efficiency and judicial economy, the Court considers Defendants' motion to dismiss in light of the allegations in Plaintiffs' Third Amended Complaint.

### A. The Rule 12(b)(6) Standard

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories. First, "[a] court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer*, 484 F.3d at 780. Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "the district court took appropriate judicial notice of publicly-available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### B. The Court Dismisses the Breach of Contract Claims in Part

Defendants move to dismiss Plaintiffs' claims for breach of contract.  A breach of contract claim requires proof of four elements: (1) a valid, enforceable contract; (2) plaintiff performed, tendered performance, or was excused from performing its contractual obligations; (3) defendant breached the contract; and (4) defendant's breach caused injury. *Marquis Acquisitions, Inc. v. Steadfast Ins.*, 409 S.W.3d 808, 813–14 (Tex. App. – Dallas 2013, no pet.).  Plaintiffs contend that Defendants have breached both the Lease between Shelby Hall and 1600 Pacific and a confidentiality agreement between Garza, Shelby Hall, and 1600 Pacific (the "Confidentiality Agreement").

*1. Breach of the Lease.* – Shelby Hall alleges that 1600 Pacific breached the Lease by: (1) failing to develop the restaurant in accordance with the parties' plans and specifications, (2) failing to open the restaurant by September 1, 2015, and (3) unilaterally terminating the Lease.  *See* Third. Am. Compl. ¶¶ 15–16, 19–23, 47.  In the Third Amended Complaint, Shelby Hall describes "several material deviations" from the plans in the restaurant's construction and development.  *Id.* ¶¶ 19–21.  Moreover, 1600 Pacific has not raised any objection to Shelby Hall's third theory of breach.  The Court holds that Shelby Hall has stated a plausible claim for breach of contract under its first and third theories of breach.

The language of the Lease, however, does not support Shelby Hall's second theory. The Lease defines the "Commencement Date" as

> September 1, 2015, or the date the Tenant takes possession of the premises, if later, <u>provided, however,</u> that such later date shall be the Commencement Date

> only if possession of the premises by Tenant is delayed beyond September 1,
> 2015 because of [1600 Pacific]'s failure to obtain a certificate of occupancy
> for the Premises, unless such failure is caused by Tenant.

*See* Third Am. Compl., Ex. A, Lease Agreement ¶ 1.15 [41-2] (emphasis in original) (hereafter "Lease"). Shelby Hall has alleged that 1600 Pacific failed to obtain a certificate of occupancy as required by the Lease. *See* Third Am. Compl. ¶ 25. As a result, the commencement date under the Lease cannot be September 1, 2015. Shelby Hall contends that "'contract interpretation issues involving factual disputes are more appropriately resolved through summary judgment, or at trial.'" Pl.'s Resp. 8 (quoting *Green Plains Energy Inc. v. Ethanol Holding Co.*, 2015 WL 590493, at *6 (Del. 2015)) (internal punctuation omitted). But Shelby Hall has not identified any disputed facts that would affect the Lease's provisions regarding the commencement date. The Court holds that Shelby Hall has failed to state a plausible claim for relief under this provision of the Lease and dismisses this aspect of Shelby Hall's breach of contract claim.

  **2. Breach of the Confidentiality Agreement.** – Garza and Shelby Hall allege that 1600 Pacific breached the Confidentiality Agreement by using Plaintiffs' trademark and other confidential or proprietary information to advertise and re-lease the restaurant. *See* Third Am. Compl. ¶¶ 36–38, 52. Garza and Shelby Hall assert that Garza entered the agreement "on behalf of all Lisa Garza Concepts," *id.* ¶ 50, which allegedly included Shelby Hall, *see* Third Am. Compl., Ex. H, Nov. 6, 2015 Letter [41-18]. In addition, Garza and Shelby Hall maintain that the execution of the Lease did not supersede the Confidentiality Agreement because the Lease only provided for the displacement of prior agreements that

"related to the Premises." *See* Lease ¶ 26.08. The Court holds that Garza and Shelby Hall have stated plausible claims for breach of the Confidentiality Agreement.

### C. The Court Dismisses the Fraud Claims in Part

Defendants move to dismiss Plaintiffs' fraud claims. Federal Rule of Civil Procedure 9(b) requires a plaintiff to allege fraud claims "with particularity." FED. R. CIV. P. 9(b). "To satisfy Rule 9(b)'s pleading requirements, the plaintiffs must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (internal quotation marks and citation omitted). Garza alleges that HRI Properties and HCI Construction made multiple misrepresentations to her regarding the restaurant's start date. The Court addresses each of these statements in turn.

***1. The October 27, 2015 Email.*** – The Third Amended Complaint alleges that, on October 27, 2015, HRI Properties "expressly confirmed that it expected to open the very next day and that 'the [R]estaurant must begin operations at that point.'" Third Am. Compl. ¶ 71 (quoting Third Am. Compl., Ex. F, Oct. 27, 2015 Email [41-16]). Plaintiffs claim this statement was false because the restaurant did not in fact open on that date. Garza's allegations regarding this statement meet the heightened pleading requirements of Rule 9(b).

Defendants nevertheless contend that this misrepresentation is not actionable because it merely expresses an expectation regarding the future. Taking all of Plaintiffs' allegations as true, the Court could equally characterize the statement as a promise of future

performance. Even so, fraudulent statements about the future are not actionable unless at the time of the statement the defendant did not intend to fulfill its promise. *See Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998) ("A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made.").

Garza's allegations demonstrate that Defendants intentionally misled her when they made this promise. Plaintiffs alleged that HRI Properties wanted Plaintiffs to rely on a September 1 commencement date so that they would "pour money and time into the project to create leverage for better Lease terms for [1600 Pacific]." Third Am. Compl. ¶ 27. Plaintiffs also alleged that Defendants wanted "to get Plaintiffs out of their way" after they "realiz[ed] in August 2015 that Plaintiffs' liquor license prevented Defendants' from obtaining the necessary license(s) to operate their hotel operation." *Id.* ¶ 30. These allegations are sufficient to state a plausible claim for fraud.

**2. *Other Misrepresentations*.** – In Plaintiffs' Response, Garza asserts that HRI Properties made similar misrepresentations in another email and that other people misled her to believe that the restaurant would open on September 1, 2015. *See* Pls.' Resp. 14–15 (citing Third Am. Compl., Ex. E, June 12, 2015 Email [41-15]). However, Plaintiffs did not explain in the Third Amended Complaint which of these statements were false, how they were fraudulent, or why Defendants made them. Because Garza failed to allege her claim for fraud based on these statements with particularity, the Court dismisses this aspect of her claim.

**3. Statements by HCI Construction.** – Plaintiffs fail to allege that HCI Construction made any fraudulent statements. The Court accordingly dismisses the fraud claim against HCI Construction.

### D. The Court Dismisses the Quasi-Contract Claims

Defendants move to dismiss Plaintiffs' claims for unjust enrichment and promissory estoppel. The Court holds that Plaintiffs' claims for unjust enrichment and promissory estoppel fail as a matter of law because Plaintiffs have alleged the existence of a contract.[3] *See Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App. – Corpus Christi 2002, pet. struck) ("The unjust enrichment doctrine applies the principles of restitution to disputes where there is no actual contract . . . ."); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 654 F. Supp. 2d 536, 544 (N.D. Tex. 2009) ("If a valid contract between the parties covers the alleged promise, promissory estoppel is not applicable to that promise – instead, the wronged party must seek damages under the contract."). In addition, the Lease includes a merger clause, providing that the Lease "constitutes the entire agreement between the parties and supersedes all prior agreements and understandings related to the Premises . . . ." *See* Lease ¶ 26.08. The Lease thus superseded any prior promises regarding the restaurant's commencement

---

[3]Garza contends that her unjust enrichment claim should nonetheless remain because Defendants have alleged that she was not a party to the Lease. *See* Pls.' Resp. 12. But Garza may only allege an unjust enrichment claim if she can establish that Defendants obtained a benefit from her "due to fraud, duress, or taking of undue advantage." *Mowbray*, 76 S.W.3d at 679. Because the Court dismisses Garza's fraud claim, the Court dismisses Garza's unjust enrichment claim as well. The Court does not reach the separate issue of whether unjust enrichment is a cause of action or merely a theory of recovery.

ORDER – PAGE 10

date.  Because Plaintiffs fail to state plausible claims for unjust enrichment and promissory estoppel, the Court dismisses these claims.

### E. Garza and Shelby Hall State Plausible Tortious Interference Claims

Defendants move to dismiss Plaintiffs' claims for tortious interference with contract. A claim for tortious interference with contract requires proof of four elements: (1) the plaintiff had a valid contract, (2) the defendant willfully and intentionally interfered with the contract, (3) the interference proximately caused the plaintiff's injury, and (4) the plaintiff incurred actual damage or loss.  *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002).  Plaintiffs contend that HRI Properties and HCI Construction have tortiously interfered with the Lease, the Confidentiality Agreement, and various contracts that Garza and Shelby Hall entered with third-party vendors (the "Vendor Contracts").

*1. Tortious Interference with the Lease and Confidentiality Agreement.* – Garza and Shelby Hall claim that HRI Properties and HCI Construction tortiously interfered with the Lease and Confidentiality Agreement by encouraging 1600 Pacific to breach their provisions. Defendants argue that HRI Properties and HCI Construction could not have tortiously interfered with 1600 Pacific's contracts because both HCI Construction and 1600 Pacific are wholly owned subsidiaries of HRI Properties.  *See* Defs.' Br. in Supp. 21–22 (citing *Am. Med. Intern., Inc. v. Giurintano*, 821 S.W.2d 331, 336 (Tex. App. – Houston [14th Dist.] 1991, no writ), *Shoellkopf v. Pledge*, 778 S.W.2d 897, 903 (Tex. App. – Dallas 1989, writ denied), and *Hood v. Tenneco-Tex. Life Ins. Co.*, 739 F.2d 1012, 1015 (5th Cir. 1984)). However, the Third Amended Complaint does not contain any allegations concerning the

ownership of HCI Construction and 1600 Pacific.  The allegations of the Third Amended Complaint, taken as true, state a plausible claim for relief against HRI Properties and HCI Construction based on their tortious interference with the Lease and Confidentiality Agreement.

     *2. Tortious Interference with the Vendor Contracts.* – Garza and Shelby Hall claim that HRI Properties and HCI Construction tortiously interfered with the Vendor Contracts by inducing 1600 Pacific to breach and terminate the Lease.  Plaintiffs allege that they "entered into and paid deposits for various third-party contracts with vendors, including, but not limited to, contracts for POS, linens, dish washer and ice machines, and public relations contracts . . . ."  Third Am. Compl. ¶ 28.  Plaintiffs further allege that HRI Properties and HCI Construction "knew by not operating the Restaurant as planned, Plaintiffs would be in breach of the Vendor Contracts," and that their conduct "prevent[ed] Plaintiffs' performance of the Vendor Contracts and/or ma[de] Plaintiffs' performance with the Vendor Contracts impossible."  *Id.* ¶¶ 30, 80.

     Garza and Shelby Hall have stated a facially plausible claim for tortious interference with the Vendor Contracts.  Garza and Shelby Hall's allegations sufficiently identify the specific contracts with which HRI Properties and HCI Construction interfered.  *Cf. Staton Holdings, Inc. v. Russell Athletic, Inc.*, 2009 WL 4016117, at *4–5 (N.D. Tex. 2009) (dismissing tortious interference claim based on plaintiff's "inability to service or fill orders for its 'existing' customers").  Garza and Shelby Hall also allege that HRI Properties and HCI Construction knew about the Vendor Contracts, and that they "believed a breach was

substantially certain to result" from their conduct. *Fluor Enterprises, Inc. v. Conex Intern. Corp.*, 273 S.W.3d 426, 443 (Tex. App. – Beaumont 2008, pet. denied). These allegations are sufficient to sustain Garza and Shelby Hall's claim for tortious interference with the Vendor Contracts.

### F. Garza and Shelby Hall State Plausible Misappropriation Claims

Defendants move to dismiss Plaintiffs' claims for trade secret misappropriation. Garza and Shelby Hall contend that HRI Properties and HCI Construction misappropriated Plaintiffs' trade secrets and confidential and proprietary information by disclosing this information "in the course of finalizing the project and advertising the Restaurant opening to the public." Third Am. Compl. ¶ 58. A claim for trade secret misappropriation under the Texas Uniform Trade Secrets Act ("TUTSA") requires proof that (1) a trade secret existed, (2) the defendant acquired the trade secret through improper means, and (3) the defendant disclosed or used the trade secret without the plaintiff's consent. *See Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013); TEX. CIV. PRAC. & REM. CODE § 134A.002.

Garza and Shelby Hall's allegations demonstrate the plausible existence of a trade secret. TUTSA defines a trade secret as:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique, process, financial data, or list of actual or potential customers or suppliers that:
>
> (A) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

> (B) is the subject of efforts that are reasonable under the circumstances
to maintain its secrecy.

Tex. Civ. Prac. & Rem. Code § 134A.002(6). Garza and Shelby Hall maintain that their "ideas, techniques, sketches, drawings, menus, recipes, design details, and specifications," Third Am. Compl. ¶ 32, their "ideas, menus, designs, sketches, drawings, design details and specifications, and marketing plans," *id.* ¶ 52, and the trademark, "SHELBY HALL," *id.* ¶ 32, all constituted trade secrets.

Not all of these items qualify as trade secrets under TUTSA. The "SHELBY HALL" trademark, for example, is not a trade secret because its validity depends on its use in commerce. *See* 15 U.S.C. § 1051 (permitting registration of trademarks "used in commerce"). Nevertheless, the Court agrees that some of these alleged items (i.e., ideas, techniques, recipes, marketing plans) are not readily ascertainable by the public and are therefore secret. The Court holds that Garza and Shelby Hall have stated plausible claims for misappropriation of trade secrets.

### G. The Court Dismisses the Defamation Claims in Part

Defendants move to dismiss Plaintiffs' claims for defamation. A common law claim for defamation requires proof that "the defendant (1) published a statement of fact; (2) that was defamatory concerning the plaintiff; (3) while acting with actual malice regarding the truth of the statement if the plaintiff was a public official or public figure, or while acting with negligence regarding the truth of the statement if the plaintiff was a private individual." *Main v. Royall*, 348 S.W.3d 381, 389 (Tex. App. – Dallas 2011, no pet.). Garza and Shelby Hall base their claims for defamation on HRI Properties's statements "expressly referenc[ing]

(purported) sexual misconduct on behalf of Garza" and its "contentions that Shelby Hall breached the Lease."  Third Am. Compl. ¶¶ 39, 84.

   *1. Shelby Hall's Defamation Claim.* – Shelby Hall has not stated a plausible claim for defamation.  When claiming defamation of a business, the alleged defamation and damages are of the owner, not of the business itself.  *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 150 n.35 (Tex. 2014).  Here, Plaintiffs allege that Garza is "the sole owner" of Shelby Hall, a Texas limited liability company.  Third Am. Compl. ¶¶ 5, 12.  Because the defamation claim belongs to Garza personally and not to Shelby Hall, the Court dismisses the defamation claim brought by Shelby Hall.

   *2. Garza's Defamation Claim.* – The plausibility of Garza's claim for defamation turns on whether she qualifies as a "public figure" and whether the alleged defamatory statements are a "public concern."  The Third Amended Complaint describes Garza as a "nationally-renowned chef" with a "reputation as a superstar chef and restauranteur," *id.* ¶¶ 12–13, and the allegations state that she is "well-respected and widely-known in Texas, and especially in Dallas," *id.* ¶ 13.  Defendants argue that these allegations, taken as true, establish Garza as an all-purpose public figure, or at the very least, a limited-purpose public figure "in the areas of restaurants, food drink, alcoholic beverages, and social nightlife."  Defs.' Br. in Supp. 26.

   Courts have identified two classes of public figures: general-purpose and limited-purpose public figures.  A general-purpose public individual is one who "achieve[s] such pervasive fame or notoriety that he becomes a public figure for all purposes and in all

contexts." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). A limited-purpose public figure, by contrast, is only a public figure "for a limited range of issues." *Id.* For a plaintiff to become a limited-purpose public figure, "(1) [t]he controversy at issue must be public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution; (2) the plaintiff must have more than a trivial or tangential role in the controversy; and (3) the alleged defamation must be germane to the plaintiff's participation in the controversy." *Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 433–34 (5th Cir. 1987)

Applying these principles, the Court holds that Garza has stated a plausible claim for defamation against HRI Properties. Garza's allegations do not show that she was so famous or notorious that she became a public figure for all purposes and contexts. Nor do the allegations demonstrate that the public was discussing Garza's alleged sexual misconduct or Shelby Hall's landlord-tenant dispute. Even if Garza were a limited-purpose public figure, the allegations set forth a plausible motive for HRI Properties to have published these statements maliciously. *See* Third Am. Compl. ¶ 39 (alleging HRI Properties made statements "in attempts to damage Plaintiffs' reputation and leverage inclusion of a 'bad boy' (or 'bad girl') provision in the Lease"). Accordingly, the Court denies Defendants' motion to dismiss Garza's defamation claim.

### H. CapRock States a Plausible Claim for Conversion

Defendants move to dismiss CapRock's claim for conversion. "To establish a claim for conversion, a plaintiff must prove that (1) the plaintiff owned or had possession of the

property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property." *Lawyers Title Co. v. J.G. Cooper Dev., Inc.*, 424 S.W.3d 713, 718 (Tex. App. – Dallas 2014, pet. denied). CapRock claims that it holds a security interest in Shelby Hall's personal property, general intangibles, and intellectual property, and that Defendants are wrongfully exercising dominion or control over this property. *See* Third Am. Compl. ¶¶ 41–43, 89–90.

The allegations of the Third Amended Complaint show that CapRock has standing to assert its claim for conversion. CapRock argues that, because Shelby Hall defaulted on its Future Receivables Sale Agreement (the "Receivable Agreement"), CapRock now holds a security interest in Shelby Hall's property. The Receivables Agreement provides that Shelby Hall's failure to maintain compliance with all relevant permits and third-party contracts related to the restaurant constitutes an event of default. *See* Defs.' App. 8. Plaintiffs have alleged that they are now "out" their Vendor Contracts, Third Am. Compl. ¶ 31, and that performance of the Vendor Contracts is "impossible," *id.* ¶ 81. These allegations are sufficient to establish a plausible event of default and resulting interest sufficient to confer standing.

The allegations also present a plausible claim for conversion. Defendants contend that CapRock's interest in future receivables is insufficient to establish a claim for conversion, which only applies to personal property. *See Simmonds Equipment, LLC v. GGR Inter., Inc.*,

2015 WL 5089169, at *10 (S.D. Tex. 2015). However, CapRock has alleged that, due to the default, its security interest now extends to Shelby Hall's personal property, and Plaintiffs have asserted that certain personal property is still on the premises. *See* Third Am. Compl. ¶¶ 43, 37. The Court denies Defendants' motion to dismiss CapRock's conversion claim.

### I. Exemplary Damages, Attorney's Fees, Interest, & Costs

Defendants move to dismiss Plaintiffs' requests for exemplary damages, attorney's fees, interest, & costs. Garza and Shelby Hall seek exemplary damages on their misappropriation of trade secrets claim and tortious interference claims. "[E]xemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence." TEX. CIV. PRAC. & REM. CODE § 41.003. To show malice, Plaintiffs must demonstrate "'a specific intent by the defendant to cause substantial injury [or harm] to the claimant.'" *Bennett v. Reynolds*, 315 S.W.3d 867, 872 (Tex. 2010) (quoting TEX. CIV. PRAC. & REM. CODE § 41.001(7)). Plaintiffs have alleged that HRI Properties and HCI Construction intentionally sought to disrupt the Lease and misappropriated Plaintiffs' trade secrets in an attempt to "get Plaintiffs out of their way." Third Am. Compl. ¶ 30. These allegations are sufficient to state a plausible claim for exemplary damages.

Plaintiffs also seek attorney's fees, interest, and costs associated with their claims. Federal Rule of Civil Procedure 54 governs these requests. *See* FED. R. CIV. P. 54(d). In general, Rule 54 provides that the Court may consider a request for attorney's fees and costs

upon submission of a post-judgment motion.  *Id.*  Because the Court has not yet entered judgment in this case, Defendants' motion to dismiss these requests is premature.

## IV. THE COURT GRANTS THE MOTION TO EXPUNGE

Defendants move to expunge Plaintiffs' notice of lis pendens.  Texas state law controls the validity of a lis pendens in federal court.  *See* 28 U.S.C. § 1964.  The Texas Property Code provides that "during the pendency of an action involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real party" the party may file a notice that the action is pending.  TEX. PROP. CODE § 12.007(a).  The Court must expunge the notice if "the pleading on which the notice is based does not contain a real property claim . . . ."  *Id.* § 12.0071(c)(1).

Plaintiffs contend that both their claim for breach of the Lease and CapRock's claim for conversion support their notice of lis pendens.  To determine whether "the pleading on which notice is based" contains a real property claim, *id.* § 12.0071(c)(1), the Court looks to the First Amended Complaint, which was the Plaintiffs' live pleading at the time they filed their notice of lis pendens.  *See In re Kroupa-Williams*, 2005 WL 1367950, at *3 (Tex. App. – Dallas 2005, orig. proceeding) (mem. op.).  In the First Amended Complaint, Plaintiffs seek monetary damages for 1600 Pacific's breach of the Lease, and CapRock seeks monetary damages for Defendants' conversion of Shelby Hall's personal property, general intangibles, and intellectual property.  Neither of these claims asserts an interest in or an encumbrance on real property.

ORDER – PAGE 19

Plaintiffs' claim for breach of the Lease does not directly affect Defendants' real property. In other contexts, Texas courts have held that a leasehold interest is essentially an interest in or an encumbrance on real property. For example, in *Merit Management Partners I, L.P. v. Noelke*, 266 S.W.3d 637, 643 (Tex. App. – Austin 2008, no pet.), a Texas court of appeals explicitly held that "[a] leasehold is an interest in real property, and a dispute over the existence of a leasehold involves a question of title to real property." *Id.* (holding county court below lacked jurisdiction to consider breach of lease claim).

The First Amended Complaint, however, does not present a dispute over the existence of a leasehold. In their Second and Third Amended Complaints, Plaintiffs allege that the Lease is still in effect and assert claims for declaratory judgment and specific performance. Plaintiffs admit that "[t]he Court's decision regarding whether Defendants breached the lease by their alleged termination of the lease, does not resolve whether the lease, if not properly terminated, is currently 'in full force and effect.'" Pls.' Reply in Supp. of Mot. for Leave to File Second Am. Compl. 4 [38]. Where a pleading only asserts a claim for damages based on breach of a lease, the claim "affects real property collaterally, not directly, and does not come within the provisions of § 12.007." *Helmsley-Spear of Tex., Inc. v. Blanton*, 699 S.W.2d 643, 644–45 (Tex. App. – Houston [14th Dist.] 1985, orig. proceeding) (voiding notice of lis pendens based on plaintiff's action for money damages and lien against real property subject to an allegedly breached lease agreement).

Moreover, CapRock's asserted interest in Shelby Hall's personal property, general intangibles, and intellectual property is not an interest in real property. Indeed, a claim for

conversion only applies to personal property under Texas law. *See Simmonds Equipment*, 2015 WL 5089169, at \*10. CapRock's interest in the restaurant premises is merely collateral to its claim for damages.

Because the First Amended Complaint does not contain a real property claim, the Court expunges the notice of lis pendens.

CONCLUSION

The Court grants leave to file the Second Amended Complaint and Third Amended Complaint. The Court orders the Clerk of Court to docket the document attached as Exhibit A to [31] as Plaintiffs' Second Amended Complaint and the document attached as Exhibit 1 to [41] as Plaintiffs' Third Amended Complaint.

The Court grants the motion to dismiss in part and denies it in part.

The Court grants the motion to expunge the notice of lis pendens and orders that the lis pendens (and accompanying notice) filed as Instrument No. 201600014321 in the real property records of Dallas County, Texas, is hereby expunged. The Dallas County Clerk of Court shall promptly remove the lis pendens (and accompanying notice) from the real property records. The Clerk shall promptly issue a Notice of Expungement, so that it may be placed on file with the Dallas County records office.

Signed August 30, 2016.


_____
David C. Godbey
United States District Judge